## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TOLORIA GANT, | ) | |
| Mother and Next Friend of D.G., a Minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1423 (RJL) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| A municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, the Defendant here moves for summary judgment in this matter, and also opposes the Plaintiff's January 28, 2008, Motion for Summary Judgment ("Plaintiff's Motion"). As shown in the accompanying memorandum of points and authorities, the Plaintiff's challenge to the administrative hearing officer's determination ("HOD") in this case lacks merit, and the HOD should be upheld by this Court. A statement of material facts as to which there is no genuine issue, a response to Plaintiff's statement of material facts and a proposed order are also attached hereto.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
March 13, 2008          E-mail: Eden.Miller@dc.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOLORIA GANT,<br>Mother and Next Friend of J.G., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation,<br><br>Defendant. | Civil Action No. 07-1423 (RJL) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Plaintiff appeals a March 27, 2007, administrative decision issued by a hearing officer pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.* ("IDEIA"). At issue in this case is whether the District of Columbia Public Schools ("DCPS") denied the student a free appropriate public education ("FAPE") when it delayed in conducting or funding an assessment of the student, and when it did not timely discuss compensatory education in consideration of the late assessment. In the Defendant's view, since the record clearly indicates that DCPS is now in compliance with the December 18, 2007, Settlement Agreement, and that any delay in compliance did not result in a denial of a FAPE, the subject HOD should be upheld.

Under the IDEIA, disabled students are entitled to a FAPE. 20 U.S.C § 1412(a)(1). An individualized education program ("IEP") team, consisting of the

disabled student's teachers, parents and other educational specialists, meet and confer in a collaborative process to determine how best to accommodate the needs of the student to provide a FAPE.  20 U.S.C. §1414(d)(1)(B).  The IEP is the written statement from the meeting that includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met.  20 U.S.C. §1414(d)(1)(A); 20 USCS § 1401(14).

The IEP team also must make decisions regarding the student's educational placement.  20 U.S.C. § 1412(a)(5)(A).  The placement must be the least restrictive environment ("LRE")—for example, whenever it is possible, children with disabilities should be educated with children who are not disabled.  *Id.*  Following an IEP meeting, the school system issues a prior notice of placement of the student at a school that can implement the IEP.  20 U.S.C. § 1415(c)(1).  Should the parent disagree with that placement selection (or any other aspects of the IEP), she can seek a due process hearing.  20 U.S.C. § 1415(c)(2) and (f).

The administrative process described in the statute, if fully employed, results in an evidentiary administrative hearing before an impartial hearing officer, at the conclusion of which an HOD is issued.  20 U.S.C. § 1415(f).  Such an HOD contains findings of fact and conclusions concerning the disputed matters.  If the student's parent does not prevail in the hearing proceedings, judicial review of the HOD by this Court may be sought.  20 U.S.C. § 1415(i)(2)(A).

## STANDARD OF REVIEW

### I.    Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  *Id*.; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997).  Factual determinations of the hearing officer are to be accorded due weight.

II.    __Review of administrative decisions under the IDEIA.__

The IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them."  *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  *Angevine v. Smith*, 292 U.S. App. D.C. 346, 959 F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  *Lyons*, 829 F. Supp. at 418.  This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices.  *Rowley*, 458 U.S. at 207-08.  Accordingly, this Court must give the hearing officer's determination "due weight," and the Plaintiff, in order to prevail, must show by a "preponderance of the evidence" that the hearing officer was wrong.

"Where the Hearing Officer's findings are based on credibility determinations of live witness testimony … and there is no supplementation of the record before the Court, particular deference is due to the Hearing Officer's decision." *R.D. v. District of Columbia*, 374 F. Supp. 2d 84, 89-90 (D.D.C. 2005).

Because the subject HOD was appropriate in all respects challenged by the Plaintiff, she cannot make the required showing, and summary judgment should be granted for the Defendants.

## <u>SUPPLEMENT TO THE RECORD</u>

Defendants here supplement the record with the following documents, Bates Stamp page numbers 97-137, attached hereto as Attachment A:[1]

1. Plaintiff's Motion for Reconsideration with Exhibits, dated April 10, 2007;[2]

   a. Exhibit, Meeting Notes, dated November 14, 2006;

   b. Exhibit, HOD, issued August 7, 2006;

   c. Exhibit, HOD, issued November 9, 2006;

   d. Exhibit, Settlement Agreement, dated December 18, 2006;

2. IEP Meeting Notes, dated March 22, 2006;[3]

3. HOD, issued June 10, 2005; and

---

[1] This Court may consider additional evidence at the request of a party. 20 U.S.C. §1415(i)(2)(B). The Defendant here requests that this Court consider these additional documents.

[2] DCPS searched for, but did not find, a copy of the Plaintiff's Motion for Reconsideration in the official record of the administrative proceedings. To the extent the Plaintiff provided a copy with her Motion for Summary Judgment, the Defendant here supplements the record with that document. Pursuant to the Student Hearing Office Due Process Hearing Standard Operating Procedures, a motion for reconsideration is deemed denied if no decision is issued within 30 days. Section 1005, attached hereto as Attachment B.

[3] These meeting notes should have been attached to DCPS Exhibit 3, but were not. R. at 16; Transcript at page 10 (hereinafter "T. at _____"). As these meeting notes are referred to in the record (see, *e.g.*, R. at 33) and were discussed by counsel at the hearing (T. at 10), the District here provides them.

4.   HOD, issued March 15, 2005.[4]

### STATEMENT OF THE RELEVANT FACTS

D.G. is an eleven year old student living in the District of Columbia who has been determined eligible for special education and related services.  Administrative Record at page 16 (hereinafter "R. at ___").   He has an emotional disability and requires a full-time special education placement.  *Id.*  D.G. currently attends Rock Creek Academy, a private school with a special education program.  *Id.*

A March 9, 2005, HOD (one of four decisions issued prior to the subject HOD) incorporated a settlement agreement requiring DCPS to conduct a Functional Behavioral Assessment ("FBA") of D.G., to develop a Behavior Intervention Plan ("BIP") if required by the FBA, to review and revise the student's IEP if necessary, and to determine if compensatory education is warranted (for the delay in conducting a FBA). R. at 136.  On June 10, 2005, another HOD was issued, this one requiring DCPS to fund an independent FBA, as DCPS had not yet conducted one pursuant to the earlier HOD. R. at 133.  The HOD also ordered DCPS to convene a meeting after receiving the FBA to review the FBA, revise and review D.G.'s IEP as necessary, discuss and determine the student's entitlement to compensatory education and discuss and determine placement. *Id.*

An independent FBA was completed in August of 2005.  R. at 128.  On March 22, 2006, an IEP meeting convened.  R. at 16.  At that meeting, the IEP team discussed, among other things, D.G.'s FBA and his entitlement to compensatory education.  R. at 16-32; R. at 128-129.  In the FBA, the assessing therapist did not recommend a behavior

---

[4] These HODs, referred to by the subsequent HODs in the record, provide context for the required compensatory education discussion.

plan for D.G. because the therapist did not observe a behavior problem—an opinion with which D.G.'s classroom teachers agreed. *Id.*

According to the meeting notes, DCPS determined that compensatory education was not warranted for a variety of reasons. R. at 128-129. First, D.G. was functioning at grade level, suggesting that he did not fall behind in his studies. *Id.* Second, D.G.'s FBA indicated that he did not require a behavior plan, so any delay in assessing him did not cause him educational harm. *Id.* Third, his frequent absences from school had an effect on his progress. *Id.* For example, his reading teacher said that "[D.G.'s] attendance is a big issue[] that strongly impacts his performance." *Id.*

On August 7, 2006, another HOD regarding D.G. was issued. R. at 111-115. At the hearing, the parties agreed to convene a meeting to review all current evaluations, update D.G.'s IEP and discuss D.G.'s need for compensatory education. R. at 113. The Hearing Officer ordered DCPS to convene a meeting, but specifically abstained from ordering a discussion of compensatory education. R. at 114, n. 2. Instead, he ordered the team to determine an educational plan that meets D.G.'s needs. *Id.* He went on to direct that, if the team should determine that D.G. was deprived of educational services, it could require additional services. *Id.* The decision did not find that DCPS denied the student a FAPE, or that DCPS was required to develop a compensatory education plan. R. at 111-115.

On November 9, 2006, yet another HOD was issued regarding D.G. R. at 117-119. This HOD was another settlement on the record in which the parties agreed to convene the meeting described in the August 7, 2006, HOD within 15 school days. R. at 119.

On November 14, 2006, Rock Creek Academy convened a meeting without a DCPS representative present.  R. at 109-110.  The team discussed the student's progress and determined that he still required the same services as in his March 22, 2006, IEP.  *Id.* Although the team was prepared to discuss compensatory education, it acknowledged that it could not do so without a DCPS representative.  R. at 110. Despite this acknowledgment, the team indicated that D.G. would benefit from tutorial services without any indication that he had experienced harm to his education.  R. at 110.  The team also did not identify, and could not have identified, a period of time in which the student was denied a FAPE.  R. at 110.

On December 18, 2006, the parties entered into a settlement agreement in which DCPS agreed to convene a meeting within 15 school days to develop a compensatory education plan pursuant to the August 7, 2006, HOD and the November 9, 2006, HOD. R. at 40.  As noted, both HODs ordered a discussion of compensatory education and development of a plan only if warranted.  R. at 114, 119.  On January 24, 2007, the Plaintiff filed a Due Process Complaint Notice, alleging that DCPS had not convened a meeting pursuant to the Settlement Agreement.  R. at 91.  On January 26, 2007, DCPS invited the Plaintiff to meet, and offered three dates in February.  R. at 88.

On February 22, 2007, DCPS convened a meeting.  At the meeting, the team discussed D.G.'s progress, reviewed his IEP and discussed his entitlement to compensatory education.  R. at 33.  The team did not change the services required in his March 22, 2006, IEP.  *Id*.  The meeting notes state "it is DCPS' position that compensatory education is not owed … it was discussed at the last meeting on [March

22, 2006].  See meeting notes from [March 22, 2006] ... [compensatory education] was discussed at [the] last meeting and doesn't appear to be warranted at this time."  R. at 33.

At the last three meetings in which the team reviewed D.G.'s IEP—March 22, 2006, November 14, 2006, and February 22, 2007—the team did not recommend *any* changes to the amount or type of services D.G. received.  R. at 16; 33-108-109; 128-129. Throughout, his services continued to be 26 hours per week of specialized instruction, ½ hour per week of speech therapy and 1 hour per week of psychological counseling.  *Id*.

On March 26, 2007, a due process hearing convened, and on March 27, 2007, the Hearing Officer issued the subject HOD.  R. at 2-4.  The issue before the Hearing Officer was whether DCPS denied the student a FAPE when it failed to timely comply with the December 18, 2006, settlement agreement.  R. at 3.  The Hearing Officer entered into the record and considered D.G's Exhibits 1-7, and DCPS' Exhibits 1-4.  R. at 3.  The Hearing Officer found that DCPS did not comply strictly with the settlement agreement to convene a meeting, but that it did convene a meeting over one month later on February 22, 2007.  R. at 3-4.  The Hearing Officer also found that DCPS "decided that compensatory education does not appear to be warranted at this time."  R. at 3.

The Hearing Officer specifically held that "[t]his hearing officer is unable to find a denial of educational benefits in this case and thus there is no denial of a FAPE. Moreover, counsel for the parent has not met his burden of proof that even if there was a procedural violation in this case that it resulted in substantive harm."  R. at 4.

**ARGUMENT**

**II.    DCPS did not deny the student a FAPE, and therefore compensatory education is not warranted.**

"Compensatory education" is a judicially-created remedy in which the student is awarded services or assistive technology for a denial of a FAPE.  The goal of compensatory education is to bring the student's educational performance up to where it would have been had the student been receiving a FAPE all along.  *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005).  As the District of Columbia Circuit Court explains:

> Under the theory of "compensatory education," courts and hearing officers may award "educational services . . . to be provided prospectively to compensate for a past deficient program." …  "[C]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student."

*Reid v. District of Columbia*, 401 F.3d at 522-523 (internal citations omitted).

While the Defendant does not dispute that DCPS did not timely complete the student's FBA or timely discuss the student's need for compensatory education, DCPS is now in compliance, and these minor procedural delays did not cause D.G. a "deprivation of educational benefit."  As the Hearing Officer pointed out in his decision, the District of Columbia Circuit Court has specifically ruled that procedural violations that do not affect the student's substantive rights do not result in a denial of a FAPE.  R. at 3, citing *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (procedural violation is not *per se* harm).

As noted by the Hearing Officer (R. at 3), this is consistent with the IDEIA which states

> … a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education. (ii) Procedural issues. In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies-- (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(i)-(ii).

In the present case, the Plaintiff has not demonstrated that D.G. experienced *any* deprivation of educational benefits due to DCPS' minor delays. HOD, R. at 4. And indeed, the record indicates otherwise. First, after the FBA was completed, the evaluator indicated that the student did not show a behavioral problem, and therefore did not require a BIP. R. at 128-129. His classroom teachers agreed with that conclusion. R. at 129. Therefore, any delay in performing the FBA did not harm the student because the assessment did not alter his service needs.

In fact, at the last three meetings in which the team reviewed D.G.'s IEP—March 22, 2006; November 14, 2006;[5] and February 22, 2007—the team did not recommend *any* changes to the amount or type of services D.G. received. R. at 16; 33-108-109; 128-129. Throughout, his service requirements continued to be 26 hours per week of specialized instruction, ½ hour per week of speech therapy and 1 hour per week of

---

[5] No DCPS representative attended this meeting.

psychological counseling. *Id*. Since no services have been missed, the student has not been harmed by any delay.

In her Motion, the Plaintiff wrongly and disingenuously states that "a discussion of compensatory education resulted in a determination that compensatory education was warranted." Plaintiffs' Motion, at 10. Rock Creek Academy convened the November 14, 2006, meeting, which the Plaintiff relies on for this assertion, without a DCPS representative present. R. at 109-110. Although the team was prepared to discuss compensatory education, it acknowledged in the meeting notes that it could not do so without a DCPS representative. R. at 110. Despite this acknowledgment, the team indicated in the meeting notes that D.G. would benefit from tutorial services without any indication whatsoever that he had experienced detrimental harm to his education. R. at 110. The team also did not, and could not, identify a period of time in which the student was substantively denied a FAPE.

In fact, at a previous meeting on March 22, 2006, which included appropriate DCPS personnel, DCPS specifically had determined that no compensatory education was warranted. R. at 109-110.

The Plaintiff complains that DCPS did not discuss compensatory education at the February 27, 2007, meeting. Plaintiff's Motion, at 4. But the meeting notes state that

> The advocate wants to come back to [a discussion of compensatory education] for [D.G.] and it needs to be explored a little further, however it is DCPS['] position that compensatory education is not owed. Per Hillary Hoffman Peak comp ed is not due and it was discussed at the last meeting on 3/22/2006. Please see meeting notes from 3/22/2006. Comp ed was discussed at last meeting and doesn't appear to be warranted at this time.

R. at 33.  Clearly, a discussion took place, as the meeting notes reference the student's

advocate bringing up the matter, and DCPS' response to that subject.  Apparently, the

Plaintiff confuses a disagreement with DCPS' decision not to award compensatory

education—a position the Plaintiff has been well aware of since March of 2006—with a

failure to discuss compensatory education.

 None of the HODs or settlement agreements in this record requires DCPS to

award compensatory education to D.G.  Rather, they all mandate a discussion as to

whether D.G. is entitled to such an award (and if he is, DCPS must develop a

compensatory education plan).  As explained in detail above, D.G. has not been deprived

of services, and is simply not due compensatory education.

 Although the primary relief that Plaintiff sought in her Due Process Complaint

Notice was for DCPS to convene a meeting to discuss compensatory education (R. at 91),

she suggests, remarkably, that the Hearing Officer should not have considered evidence

demonstrating that such a meeting had already convened.  Plaintiff's Motion, at 7.  Yet

the result of the Hearing Officer ignoring the February 27, 2007, meeting notes would be

for him to order the same meeting that already had taken place.

 The Plaintiff also makes much of DCPS' reliance on its initial determination

regarding compensatory education at the March 22, 2006, IEP meeting.  Plaintiff's

Motion, at 10.  But what the Plaintiff fails to acknowledge is that the possible entitlement

to compensatory education stemmed from the delay in conducting an FBA and convening

a meeting to review the student's IEP in light of new evaluations.  The completion of the

FBA and the subsequent meeting resulted in compliance with the first two HODs, and

arguably satisfied the next two HODs and the subject December 18, 2006, settlement

agreement.  Again, the student had three meetings in one year, and none of those meetings resulted in a change to the services in the student's IEP.  Clearly, DCPS' March 22, 2006, determination regarding compensatory education is relevant, and was appropriately deferred to in the subsequent meeting on February 27, 2007.  The Plaintiff has offered no information to demonstrate educational harm to the student caused by DCPS.  Thus, she fails to meet her burden of proof.

II.    **The Hearing Officer considered all of the Plaintiff's evidence and arguments, and his ultimate determinations should be deferred to in this case.**

At the due process hearing, the Plaintiff had a full opportunity to present evidence and argument to support her requests for relief to the Hearing Officer.  In the HOD, the Hearing Officer took into account all of the parties' legal arguments and documentary evidence—including the student's exhibits 1-7 and DCPS' exhibits 1-4.  Indeed, the decision was a detailed and reflective consideration of both the parties' positions and the best interests of the student.  The relief ordered was designed to take the particular circumstances of the student into account, and was based on experience in the confronting of such educational problems.

While the Plaintiff may request this Court to disregard the Hearing Officer's conclusions, and to make an independent (and different) determination of the appropriate relief, there is no basis for the Court to conclude either that the Hearing Officer did not properly consider the evidence submitted, or that his expressed views are not entitled to conclusive deference by this Court.  The Hearing Officer fully considered the parties' documentary evidence and weighed the arguments of their counsel, and explained the basis for his conclusions.

The amount of deference given to an administrative hearing officer's decision is based in part on whether the findings reached were "thorough and complete." *See*, e.g., *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999); *see also S.H. v. State-Operated School Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). In this case, the administrative findings and conclusions were both thorough and complete, were legally correct, and should be summarily affirmed.

## CONCLUSION

For the foregoing reasons, this Court should grant the Defendants' Motion for Summary Judgment, and deny the Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
March 13, 2008                    E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TOLORIA GANT, | ) | |
| Mother and Next Friend of D.G., a Minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1423 (RJL) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| A municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 56.1, the Defendant submits this statement of material facts as to which there is no genuine issue:

1. D.G. is an eleven year old student living in the District of Columbia who has been determined eligible for special education and related services. Administrative Record at page 16 (hereinafter "R. at ").

2. He has an emotional disability and requires a full-time special education placement. *Id.*

3. D.G. currently attends Rock Creek Academy, a private school with a special education program. *Id.*

4. A March 9, 2005, HOD (one of four decisions issued prior to the subject HOD) incorporated a settlement agreement requiring DCPS to conduct a Functional Behavioral Assessment ("FBA") of D.G., to develop a Behavior Intervention Plan ("BIP") if required by the FBA, to review and revise the student's IEP if

necessary, and to determine if compensatory education is warranted (for the delay in conducting a FBA).  R. at 136.

5.  On June 10, 2005, another HOD was issued, this one requiring DCPS to fund an independent FBA, as DCPS had not yet conducted one pursuant to the earlier HOD.  R. at 133.

6.  The HOD also ordered DCPS to convene a meeting after receiving the FBA to review the FBA, revise and review D.G.'s IEP as necessary, discuss and determine the student's entitlement to compensatory education and discuss and determine placement.  *Id.*

7.  An independent FBA was completed in August of 2005.  R. at 128.

8.  On March 22, 2006, an IEP meeting convened.  R. at 16.

9.  At that meeting, the IEP team discussed, among other things, D.G.'s FBA and his entitlement to compensatory education.  R. at 16-32; R. at 128-129.

10. In the FBA, the therapist did not recommend a behavior plan for D.G. because the therapist did not observe a behavior problem, and his teachers supported that assessment.  R. at 128-129.

11. According to the meeting notes, DCPS determined that compensatory education was not warranted for a variety of reasons.  *Id.*

12. First, D.G. was functioning at grade level, suggesting that he did not fall behind in his studies.  *Id.*

13. Second, D.G.'s FBA indicated that he did not require a behavior plan, so any delay in assessing him did not cause him educational harm.  *Id.*

14. Third, his frequent absences from school had an effect on his progress.  *Id.*

15. For example, his reading teacher said that "[D.G.'s] attendance is a big issue[] that strongly impacts his performance." *Id.*

16. On August 7, 2006, another HOD regarding D.G. was issued. R. at 111-115.

17. At the hearing, the parties agreed to convene a meeting to review all current evaluations, update D.G.'s IEP and discuss D.G.'s need for compensatory education. R. at 113.

18. The Hearing Officer ordered DCPS to convene a meeting, but specifically abstained from ordering a discussion of compensatory education. R. at 114, n. 2.

19. Instead, he ordered the team to determine an educational plan that meets D.G.'s needs. *Id.*

20. He went on to direct that, if the team should determine that D.G. was deprived of educational services, it could require additional services. *Id.*

21. The decision did not find that DCPS denied the student a FAPE, or that DCPS was required to develop a compensatory education plan. R. at 111-115.

22. On November 9, 2006, yet another HOD was issued regarding D.G. R. at 117-119.

23. This HOD was another settlement on the record in which the parties agreed to convene the meeting described in the August 7, 2006, HOD within 15 school days. R. at 119.

24. On November 14, 2006, Rock Creek Academy convened a meeting without a DCPS representative present. R. at 109-110.

25. The team discussed the student's progress and determined that he still required the same services as in his March 22, 2006, IEP. *Id.*

26. Although the team was prepared to discuss compensatory education, it acknowledged that it could not do so without a DCPS representative.  R. at 110.

27. Despite this acknowledgment, the team indicated that D.G. would benefit from tutorial services without any indication that he had experienced harm to his education.  R. at 110.

28. The team also did not identify, and could not have identified, a period of time in which the student was denied a FAPE.  *Id.*

29. On December 18, 2006, the parties entered into a settlement agreement in which DCPS agreed to convene a meeting within 15 school days to develop a compensatory education plan pursuant to the August 7, 2006, HOD and the November 9, 2006, HOD.  R. at 40.

30. As noted, both HODs ordered a discussion of compensatory education and development of a plan only if warranted.  R. at 114, 119.

31. On January 24, 2007, the Plaintiff filed a Due Process Complaint Notice, alleging that DCPS had not convened a meeting pursuant to the Settlement Agreement.  R. at 91.

32. On January 26, 2007, DCPS invited the Plaintiff to meet, and offered three dates in February.  R. at 88.

33. On February 22, 2007, DCPS convened a meeting.  R. at 33.

34. At the meeting, the team discussed D.G.'s progress, reviewed his IEP and discussed his entitlement to compensatory education.  R. at 33.

35. The team did not change the services required in his March 22, 2006, IEP.  *Id.*

36. The meeting notes state "it is DCPS' position that compensatory education is not owed … it was discussed at the last meeting on [March 22, 2006].  See meeting notes from [March 22, 2006] ... [compensatory education] was discussed at [the] last meeting and doesn't appear to be warranted at this time."  R. at 33.

37. At the last three meetings in which the team reviewed D.G.'s IEP—March 22, 2006, November 14, 2006, and February 22, 2007—the team did not recommend *any* changes to the amount or type of services D.G. received.  R. at 16; 33-108-109; 128-129.

38. Throughout, his services continued to be 26 hours per week of specialized instruction, ½ hour per week of speech therapy and 1 hour per week of psychological counseling.  *Id.*

39. On March 26, 2007, a due process hearing convened, and on March 27, 2007, the Hearing Officer issued the subject HOD.  R. at 2-4.

40. The issue before the Hearing Officer was whether DCPS denied the student a FAPE when it failed to timely comply with the December 18, 2006, settlement agreement.  R. at 3.

41. The Hearing Officer entered into the record and considered D.G's Exhibits 1-7, and DCPS' Exhibits 1-4.  R. at 3.

42. The Hearing Officer found that DCPS did not comply strictly with the settlement agreement to convene a meeting, but that it did convene a meeting over one month later on February 22, 2007.  R. at 3-4.

43. The Hearing Officer also found that DCPS "decided that compensatory education does not appear to be warranted at this time."  R. at 3.

44. The Hearing Officer specifically held that "[t]his hearing officer is unable to find
a denial of educational benefits in this case and thus there is no denial of a FAPE.
Moreover, counsel for the parent has not met his burden of proof that even if there
was a procedural violation in this case that it resulted in substantive harm."  R. at
4.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
March 13, 2008            E-mail: Eden.Miller@dc.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                              |     |                                  |
| -------------------------------------------- | --- | -------------------------------- |
| TOLORIA GANT,                                | )   |                                  |
| Mother and Next Friend of D.G., a Minor,     | )   |                                  |
|                                              | )   |                                  |
|     Plaintiff,           | )   |                                  |
|                                              | )   |                                  |
|     v.                   | )   | Civil Action No. 07-1423 (RJL)   |
|                                              | )   |                                  |
| DISTRICT OF COLUMBIA,                        | )   |                                  |
| A municipal corporation,                     | )   |                                  |
|                                              | )   |                                  |
|     Defendant.           | )   |                                  |

## DEFENDANTS' RESPONSE TO THE PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The Defendant, by counsel, here responds to the Plaintiff's Statement of Material Facts. The Defendant notes that the parties agree that this case may be disposed of by summary judgment motions. Thus, while the Defendant does not claim that the facts contained in the Plaintiff's Statement create a genuine issue requiring trial, the facts set forth in the Defendant's Statement of Material Facts directly conflict with the Plaintiff's facts in that they require a grant of summary judgment for the Defendant. Also, the Defendant questions the materiality of Plaintiff's Fact Statement Numbers 7-13, 16. Further, the Plaintiff's fact statements do not appear to sufficiently support the positions in her Motion. The Court should assess the weight ascribed to these fact statements and their materiality to the issues presented in this case accordingly.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
March 13, 2008                E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOLORIA GANT, | ) |
| Mother and Next Friend of J.G., a Minor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07-1423 (RJL) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| A municipal corporation, | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

Upon consideration of the Defendant's Motion for Summary Judgment and the

Plaintiff's Cross-Motion for Summary Judgment, the Oppositions and Replies thereto,

and the record herein, it is, on this _____ day of _____, 2008, hereby

**ORDERED** that:

1. the Defendant's Motion for Summary Judgment is **GRANTED**; and it is further

   **ORDERED** that

2. the Plaintiff's Motion for Summary Judgment is **DENIED;** and it is further

   **ORDERED** that

3. this case is **DISMISSED WITH PREJUDICE.**

_____

United States District Judge Richard J. Leon

Attachment A

*Gant v. District of Columbia*
Civil Action No. 07-1423 (RJL)

**<u>SUPPLEMENTAL INDEX OF RECORD</u>**

**<u>Description</u>**                                                                     **<u>Page</u>**

Petitioner's Motion for Reconsideration, 4/10/07          -       97

    Ex. MDT Meeting Notes, 2/27/07          -       108

    Ex. MDT Meeting Notes, 11/14/06          -       109

    Ex. HOD, 8/7/06          -       111

    Ex. HOD, 11/9/06          -       117

    Ex. Settlement Agreement, 12/18/06          -       121

IEP Meeting Notes, 3/22/06          -       128

HOD, 6/10/05          -       130

HOD, 3/15/05          -       134

**Before the**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**STATE ENFORCEMENT AND INVESTIGATION DIVISION**

|  |  |  |
|---|---|---|
| In re D██████ G████, | ) | Seymour DuBow, Esq. |
| Special Education Student, | ) | Due Process Hearing Officer |
|  | ) |  |

## PETITIONER'S MOTION FOR RECONSIDERATION

The Petitioner respectfully requests that the Hearing Officer reconsider his HOD

of March 27, 2007. Specifically, the Petitioner asks that the Hearing Officer order DCPS

to develop an appropriate compensatory education plan for D████ consistent with the

terms of two prior Hearing Officer's Determinations, dated August 7, 2006 and

November 9, 2006, and a Settlement Agreement, dated December 18, 2006.

The Complaint in this case alleges that DCPS failed to discuss and determine

compensatory education in accordance with the two HODs and Settlement Agreement.

The March 27, 2007 HOD denied the Petitioner's requested relief, based on the Hearing

Officer's reading of MDT notes from February 27, 2007. According to the HOD, the

meeting notes indicate DCPS' substantial compliance with its obligations under the

previous two orders and settlement agreement.

The Hearing Officer's order is both procedurally and substantively problematic.

For the reasons articulated below, the Petitioner is entitled to her requested relief and

respectfully requests the Hearing Officer reconsider his previous order.

1

## I.    AS A PROCEDURAL MATTER, THE EVIDENCE ON WHICH THE HOD IS BASED SHOULD NOT HAVE BEEN ADMITTED.

The undersigned counsel has argued time and again that the tactics DCPS employs in litigating IDEA cases are both unfair and unlawful. All too often, DCPS' practice creates the problems evident in this case.

The Hearing Officer based his decision on notes from a February 27, 2007 MDT meeting to which DCPS had not referred in its Response to the Complaint or in its (nonexistent) oppositions to the Petitioner's motions for summary judgment and default, and which DCPS did not disclose until after the hearing in this matter occurred.[1] The Petitioner never had any reason to suspect DCPS would present the defense that it did, and therefore no opportunity for a fair hearing on the issue. This sort of surprise is precisely what the procedural rules of the IDEA, the Rules of Civil Procedure and centuries old principles of due process in an adversarial system have been set up to avoid.

The Petitioner filed a due process complaint on January 24, 2007, claiming that DCPS failed to comply with two prior HODs and a Settlement Agreement requiring DCPS to convene an MDT meeting on of before January 22, 2007. In a document identified as a "Response",[2] DCPS acknowledged that it had failed to convene the required meeting, and that it had only begun attempting to schedule the meeting after the Petitioner's complaint was filed. DCPS said nothing in its Response to suggest that it had complied with the Settlement Agreement.

The Petitioner filed a Motion for Summary Judgment on March 13, 2007 in which she argued that DCPS had not complied with its obligations under the August 7, 2006 and

---

[1] The meeting notes do not actually prove DCPS' compliance with its obligations, an issue which is addressed in Section II of this Motion.

[2] As the Petitioner argued in her Motion for Entry of Default and Default Judgment, DCPS "Response" fails to comply with the requirements of the IDEA.

2

November 9, 2006 HODs and the December 18, 2006 Settlement Agreement. DCPS filed no response to the Petitioner's Motion for Summary Judgment.

The Petitioner filed a Motion for Entry of Default and Default Judgment on March 19, 2007 for DCPS' failure to respond to the Petitioner's complaint in accordance with IDEA requirements. Again, DCPS did not respond to the Petitioner's Motion.

At the hearing, the Hearing Officer held the motions for default and summary judgment in abeyance. The HOD did not address either motion.

DCPS filed disclosures in this case on March 20, 2007, identifying three documents. DCPS did not disclose the February 27, 2007 meeting notes, the document on which the Hearing Officer based his decision.

To summarize, prior to the hearing in this case, DCPS had essentially admitted its violation of the Settlement Agreement in its Response, had declined to oppose the Petitioner's motions for default and for summary judgment, had declined to disclose the document upon which the Hearing Officer now relies, and had in no way presented any defense to the allegations in the complaint.

The reasons to require compliance with procedural requirements of notice are manifold. Had DCPS presented its alleged defense in its "Response," or at any point in the pre-hearing process, the Petitioner could have prepared a rebuttal to DCPS' arguments or, alternatively, dropped her case entirely, saving the Parties and the system time and expense.

DCPS robbed the Petitioner of her right to those opportunities when it willfully declined to comply with the law. The Hearing Officer's decision approves DCPS' unfair and illegal procedural practices, thereby encouraging them to continue in their practices.

3

The Petitioner respectfully requests the Hearing Officer reconsider his decision to admit

DCPS' improper evidentiary offering, and his reliance thereon.

## II.    THE HEARING OFFICER MISINTERPRETED THE SIGNIFICANCE OF DCPS' EXHIBIT.

DCPS' contends that the February 27, 2007 meeting notes prove that DCPS had

met its prior obligations, but a broader analysis demonstrates that this is clearly not the

case. Had the Petitioner been afforded the opportunity to do so, she would have proved

this at the hearing. As it is, the Petitioner is left to present her arguments in this Motion,

which she urges the Hearing Officer to consider.

The written statement, from the February 27, 2007 meeting notes, on which the

Hearing Officer seemingly relies, reads: "Comp ed. was discussed at last meeting and

doesn't appear to be warranted at this time." Exhibit 1. The written statement is both false

and irrelevant to the issues the Hearing Officer was asked to determine.

### A.  Factual Falsity

On November 14, 2006, an MDT meeting was convened at Rock Creek

Academy. Exhibit 2. DCPS was invited to the meeting but did not attend. See id. A

discussion of compensatory education resulted in a determination that compensatory

education was warranted. Specifically, "the classroom teachers, as well as the speech

pathologist feels [sic] that [D██████] would benefit from having tutorial services. D█████

[sic] needs academic support for reading, written language, and math. Parent and

advocate has [sic] asked for compensatory education since his IEP meeting that was held

11.12.2004., DCPS refused to devise comp. ed. plan." Id.

Where the February 27, 2007 MDT meeting notes claim that compensatory

education was determined unwarranted, they are clearly factually incorrect.

4

100

**B. Chronological Irrelevance**

The chronology of the events in this case leads to the logical conclusion even had there been a determination "at the last meeting" that compensatory education was not warranted, DCPS was not relieved of its obligations to discuss and determine appropriate compensatory education at a meeting on or before January 22, 2007.

Prior to the February 27, 2007 MDT meeting, the last meeting at which DCPS participated was held on March 22, 2006. Since that time, DCPS violated an HOD dated August 7, 2006 that ordered DCPS to convene an MDT meeting on or before August 25, 2006. The Petitioner filed a due process complaint for that violation that resulted in a Consent Order on November 9, 2006 that required DCPS to convene a meeting within 15 school days.

When DCPS failed to convene the meeting as required by the November 9, 2006 HOD, the Petitioner filed a complaint that resulted in a Settlement Agreement dated December 18, 2006. The Settlement Agreement required DCPS to "Convene an MDT meeting within fifteen (15) school days to develop a compensatory education plan per the terms of the August 7, and November 9, 2006 HODs.

Therefore, whether the February 27, 2007 notes refer to the last meeting DCPS attended – on March 22, 2006 – or to the November 14, 2006 meeting, it has no bearing on DCPS' obligation to discuss and determine compensatory education in accordance with the Settlement Agreement, because those meetings occurred before the Settlement Agreement. Simply put, DCPS could not have complied with a settlement agreement before it was executed.

The notes from the February 27, 2007 meeting, even if improperly admitted and considered, do not exhibit any discussion of compensatory education; to the contrary, they exhibit a refusal to discuss it. Because no prior notes indicate that discussion, and because any such notes would in any case be irrelevant to the question of the violation of the December 18, 2006 Settlement Agreement, DCPS must be found in violation of the Settlement Agreement.

## CONCLUSION

The Hearing Officer should not have considered the evidence submitted by DCPS after the hearing, and in fact should have refused even to hear argument on the point. Regardless, though, that evidence does not support DCPS' position. Accordingly, the Petitioner respectfully requests the Hearing Officer reconsider his March 27, 2007 order, and grant the Petitioner's requested relief.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

6

102

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2007, I sent a copy of the foregoing by facsimile

to Counsel for the Respondent.


Respectfully submitted,


Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264


7

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Officer Seymour DuBow |
| *Fax Number:* | 202-442-5556 |
| *From:* | Douglas Tyrka |
| *Regarding:* | D██ G██ |
| *# of pages:* | 8 |
| *Notes:* | Motion for Reconsideration |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

104

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| ***Recipient:*** | Aaron Price, Sr. |
| ***Fax Number:*** | 202-442-5098 |
| ***From:*** | Douglas Tyrka |
| ***Regarding:*** | D██████ G████ |
| ***# of pages:*** | 8 |
| ***Notes:*** | Motion for Reconsideration |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

105

```
TRANSMISSION VERIFICATION REPORT
```

```
TIME : 04/10/2007 15:43
NAME : TYRKA & ASSOCIATES
FAX  : 2022654264
TEL  : 2022654260
SER.# : 000A6J693992
```

```
DATE,TIME         04/10  15:41
FAX NO./NAME      2024425556
DURATION          00:01:50
PAGE(S)           08
RESULT            OK
MODE              STANDARD
                  ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Hearing Officer Seymour DuBow

*Fax Number:*     202-442-5556

*From:*           Douglas Tyrka

*Regarding:*      D████ G████

*# of pages:*     8

*Notes:*          Motion for Reconsideration

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
```

```
                              TIME  : 04/10/2007 15:40
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────┐
│  DATE,TIME            04/10  15:38                         │
│  FAX NO./NAME         2024425097                           │
│  DURATION             00:02:01                             │
│  PAGE(S)              08                                   │
│  RESULT               OK                                   │
│  MODE                 STANDARD                             │
│                       ECM                                  │
└──────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*        Aaron Price, Sr.

*Fax Number:*       202-442-5098

*From:*             Douglas Tyrka

*Regarding:*        D██████ G████

*# of pages:*       8

*Notes:*            Motion for Reconsideration

107

Conference Summary for Student ID: 9075426          Page 1 of 1

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
#### WASHINGTON, D.C.

#### MULTIDISCIPLINARY TEAM
#### (MDT)
#### MEETING NOTES

**MDT REFERRAL DATE:**                        **MEETING DATE: 2/27/2007**
**STUDENT:** ___G___ D_____    **SCHOOL:** ___Rock Creek Academy___

| PARTICIPANTS | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Sharon Millis | | Educational Advocate |
| Sherrie Waul | | DCPS-LEA Monitor |
| Ms. Long | | Special Educator |
| Ms. Haley | | Speech Pathologist |
| Ms. Kress | | Clinical Therapist |
| Ms. Page | | IEP Coordinator |

The purpose of today's meeting is to update D_____'s IEP, discuss progress, and determine if comp ed. is due. DCPS was in attendance. A SEP will be devised for clinical and speech language evaluation.

Ms. Haley, CCC-SLP: He is a very bright young man. Some things that he can focus on and accomplish are advance for his age group, especially when he is interested in the task at hand, but then there are times he can be invasive about doing work or pick and choose what he wants to do. With the up's and down's with his approach to learning impacts him mastering his goals. He needs to stay with the things that he is working on so he can master them and move on. Overall he is good in the therapy sessions, but there are days when he not interested, he is just not interested. D_____ doesn't like to do things that have unit complexity. He enjoys things that are broken down. When his motivation is good it is absolutely superb, but this last quarter he has been doing very well. Currently, he receives .5 hr per/wk of speech therapy. Ms. Haley feels that he will master his vocabulary goal this quarter, and then his focus will be on analogies. D_____ has the ability to use vocabulary words in sentences, but sometimes he seems he doesn't like to switch off on different task. Ms. Haley would like for him to have a new speech language evaluation.

Ms. Long, Special Educator: Teaches D_____ reading and he is progressing toward his goals, but he does just enough to get by and he's not allowing himself to work toward his potential. He is allowing negative behaviors interfere with his work progress. Most of the time he needs prompts and redirection. There are times he has to restart an activity in order to be successful. This isn't all of the time it really depends on the mood he is in. D_____ doesn't avoid reading class, but when he has to write he will just do enough to get by.

Ms. Woldemichael, Math Teacher: Devise detail narrative. Please see attached narrative.

Ms. Kress, Clinical Therapist: Ms. Kress is not recommending a change in his hours, and he is paired with another student that he works well with. Ms. Kress keeps in touch with Ms. Woldemichael to make sure D_____ is using the strategies to benefit.

The advocate wants to come back to the for D_____ and it needs to be explored a little further, however it is DCPS position that compensatory education is not owed. Per Hillary Hoffman Peak comp. ed. is not due and it was discussed at the last meeting on 3/22/2006. Please see meeting notes from 3/22/2006.

Comp ed. was discussed at last meeting and doesn't appear to be warranted at this time.

D_____ is a student that still requires special education services and he will receive .5 hr per/wk, 1 hr per/wk of clinical therapy, and 26.0 hrs per/wk of specialized instruction. Testing Level: II and accommodations: Periodic breaks, small group setting, and extra response time.

THE PARENT ☑ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING
AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT ___G___ D_____
☑ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION
☐ IS TO BE EXITED FROM SPECIAL EDUCATION

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

MDT REFERRAL DATE:
STUDENT: __G___ D_____    SCHOOL: __Rock Creek Academy__    MEETING DATE: 11/14/2006

| PARTICIPANTS | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Sharon Millis | *Sharon Millis* | Educational Advocate |
| Ms. Kress | | Clinical |
| Ms. Woldemichael | *Ms Woldemichael* | Special Educator |
| Ms. Arvette Page | *Arvette* | IEP Coordinator |
| Ms. Long | *Ms.* | Special Educator |
| Ms. Haley | *Ms. R. Haley* | Speech Pathologist |

The purpose of today's meeting is to get an update on how D____ is doing and review his educational evaluation.

Ms. Page reviewed the educational evaluation. His broad reading: 104;4.3, broad math: 91; 2.8, and written language: 101; 4.2. He should have accommodations for his ADHS such as shorten tasks, frequent breaks, allowance for extra movement and a highly enthusiastic teacher.

Ms. Woldemichael, Special Educator: D____ is in Ms. Woldemic he can addnumbers with up to 5 digits with regrouping. He is able to recall basic addition and subtraction facts easily and knows some multiplication and division facts. D____ has trouble staying on task. He often times does not complete his homework or his class work. He often forgets how to solve a porblem using the correct method or it takes him a while to recall the steps to solve the problems. In reading D____'s decoding & spelling skills are above grade level. His fluency skills are on grade level. D____'s distractability and impulsivity interferes with his learning. Ms. Woldemichael will take the mastery objective out and use his strength, which is reading for word problems.

Ms. Long, Special Educator: D____ is showing progress, but he hasn't mastered his goals. He is a bright student, but his behavior is hendering him from putting forth his best efforts. D____ has a hard time ignoring negative behavior. In class, he constantly needs prompted to ignore behavior. The behavior that Ms. Long is seeing currently wasn't the same type of behavior that he displayed last year. D____ hasn't been bringinng his homework back consistently. He does well in the classroom, but he just is struggling this year with the homework, so Ms. Long will work with Ms. Woldemichael and Ms. Kress to come up with some reinforcers.

Ms. Millis would like for Ms. Kress to follow-up with the parent regarding the medication.

Ms. Kress, Clinical Therapist: Devise a detail narrative. D____ is able to focus and engage in therapy. We are currently working on impulse control, (stop, think and act) as well as following directions and improving our peer interactions. While D____ come to hterpay eager to address his issues he continues to struggle with implementing the new techniques and skills he learns in the classroom. I have discussed several issues with his homeroom teacher and we are working as a team to help D____ in class with remaing focused, respecting peers, and impulse control. D____ reports not having his medication on a regular basis. This may be a factor contributing to his impulse control. D____ struggles with being respectful to his peers through his words and actions. We work on this goal in group through role play and discussion of in class scenarios. D____ often needs to have several prompts to disengage in negative interactionls with peers. D____ responds well to positive reinforcement as well as one to one attention. His impulse control, fidgeting and verbal outbursts are affecting his in class performance. I will be working closely with his teacher to help implement a specific intervention plan. This may involve some in class work. I will be working with the teahcer to create a more specific plan to help D____ in class. This may include in class work until we can get D____ on track.

Ms. Haley, Speech Pathology: D____ has started to be more cooperative this semester. He had a rough beginning since September, but the last couple of weeks he has refocused. D____ has a tendency to get caught up into a lot of things that can easily distract him. He seems to be settling and he has so much potential. When he is focused he works very hard. In the middle of one sessions he stated, "Ms. Haley you hate me." Ms. Haley has shown him that D____ is a hardworking student, but wanted it to be clear that some of his behaviors aren't accepted.

D____ is a student that still requires special education services. He will continue to receive speech, clinical therapy, and specialized instruction.

Comp. Ed. Discussions: According to the HOD dated May 19, 2006 DCPS was to convene a meeting to discuss and devise a comp. ed. plan; DCPS was invited, however did not attend. It is the parent and advocates position that they were prepared to move forward on the compensatory education issue, but was unable to do so due to lack of participation from DCPS. The classroom teachers, as well as speech pathologist feels that he would benefit from having tutorial services. D█████ needs academic support for reading, written language, and math. Parent and advocate has asked for compensatory education since his IEP meeting that was held 11.12.2004., DCPS refused to devise comp. ed. plan.

THE PARENT ☒ IS PRESENT ☑ IS NOT PRESENT AT THE MEETING
AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT ___G██ D███___
☑ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION
☒ IS TO BE EXITED FROM SPECIAL EDUCATION

# District of Columbia Public Schools
## State Enforcement and Investigation Division
Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

| | | |
|---|---|---|
| D██████ G████, STUDENT | ) | |
| | ) | |
| Date of Birth: ██████████, 1996 | ) | Hearing Date: July 18, 2006 |
| | ) | |
| Petitioner, | ) | Complaint Filed: May 19, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Rock Creek Academy | ) | |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| Parents: | Ms. Toloria Gant, Mother |
| | 1512 Queen Street, N.E. |
| | Washington, D.C. 20002 |
| | |
| Counsel for Petitioner: | Douglas Tyrka, Esquire |
| | Tyrka & Houck, LLP |
| | 1726 Connecticut Avenue, N.W.; Suite 400 |
| | Washington, D.C. 20009 |
| | (202) 265-4260; Fax: (202) 265-4264 |
| | |
| Counsel for DCPS: | Karen J. Herbert, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |

111

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | D████ G████ |
| Child's Parent(s) (specific relationship) | Toloria Gant |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Karen J. Herbert, Esquire |

2

112

**Jurisdiction**

  This hearing was conducted in accordance with the rights established under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

  Petitioner is a nine year-old student attending Rock Creek Academy ("RCA"). On May 19, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to comply with the terms of a hearing officer's decision ("HOD"). The due process hearing was convened on July 18, 2006. The parties' Five Day Disclosure Notices were admitted into evidence at the hearing. Neither party offered oral testimony at the hearing. The parties agreed to relief for Petitioner as is described in the Findings of Fact below.

**Findings of Fact**

  1. Petitioner is a nine year-old student attending RCA.[1]

  2. During the hearing, the parties agreed to the following relief for Petitioner:

    a. Within twenty (20) days of the issuance of this decision, DCPS shall convene a Multidisciplinary Team ("MDT") meeting to review all current evaluations, update Petitioner's Individualized Education Program ("IEP"), and discuss Petitioner's need for compensatory education services. If the MDT determines that Petitioner requires compensatory education services, it shall develop a compensatory education services plan..

    b. DCPS shall coordinate scheduling all meetings through Petitioner's counsel.

    c. Any delay in meeting any of the deadlines attributable to Petitioner will extend DCPS' deadlines on a day-for-day basis.

**Conclusions of Law**

  The parties' agreement is in Petitioner's best interests and its terms will be substantially included in the order below.[2]

---

[1] *Complaint* at 1.

# ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel at the hearing, this 7th day of August 2006, it is hereby

ORDERED, that on or before August 25, 2006, DCPS shall convene an MDT meeting to review all current evaluations and update Petitioner's IEP. DCPS shall coordinate scheduling the meeting through Petitioner's counsel, Tyrka & Houck, LLP, (202) 265-4260.

IT IS FURTHER ORDERED, that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate DCPS Placement Specialist and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.[3]

IT IS FURTHER ORDERED, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

IT IS FURTHER ORDERED, that this Order is effective immediately.

---

[2] The Order will not include a requirement to discuss compensatory education services. "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student..." *Reid v. District of Columbia*, 401 F.3d 516, 523-24 (D.C. 2005). "[C]ourts and hearing officers may award "educational services . . . to be provided prospectively to compensate for a past deficient program." *Id.* at 522. Thus, compensatory education services constitute relief to be awarded upon a finding of a violation of IDEA. In the absence of an agreement between the parties that a certain amount of such services are warranted, compensatory education services is not an appropriate subject of discussion for an MDT. In fact, the Court in Reid held that a hearing officer "may not delegate his authority to a group that includes an individual specifically barred from performing the hearing officer's functions." *Id.* at 526. Since the hearing officer is required to be independent of DCPS, the hearing officer may not delegate his authority to award compensatory education services to a team that includes an employee of DCPS. Rather than discuss compensatory education services, the MDT should determine an educational plan that meets Petitioner's unique needs. If the MDT is aware that Petitioner was deprived of services to which Petitioner was entitled for a finite period of time, an appropriate program may require services in addition to the traditional formula of specialized instruction and an hour or two per week of related services.

[3] If DCPS fails to contact Petitioner's counsel to coordinate scheduling the MDT meeting by a date that would make compliance with this Order feasible, Petitioner's counsel shall initiate telephone calls and electronic correspondence to attempt to effect compliance within the timelines set out herein.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).


Terry Michael Banks
Hearing Officer


Date:   August 7, 2006          Issued:  8/7/06

Copies to:

Douglas Tyrka, Esquire
Tyrka & Houck, LLP
1726 Connecticut Avenue, N.W.; Suite 400
Washington, D.C. 20009
(202) 265-4260; Fax: (202) 265-4264

Karen J. Herbert, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

5

115

### District of Columbia Public Schools
#### *State Enforcement Investigative Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



### *FACSIMILE SHEET*

Date: November 9, 2006

TO: Douglas Tyrka

FROM: STUDENT HEARING OFFICE

RE: G⬛, D⬛

TOTAL NUMBER OF PAGES, INCLUDING COVER: 4

COMMENTS:

*CONFIDENTIALITY NTOICE*: The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

116



# District of Columbia Public Schools

### State Enforcement & Investigation Division

## confidential

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

|  |  |  |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL** |
|  | ) | **DUE PROCESS HEARING** |
| D███████ G███, student | ) |  |
| Date of Birth: ███████, 1996 | ) | **CONSENT ORDER** |
| Petitioner, | ) |  |
|  | ) | Request Date:        September 9, 2006 |
| versus | ) | Teleconference Date:   November 8, 2006 |
|  | ) |  |
| The District of Columbia Public Schools, | ) | Held at:  825 North Capitol Street, NE |
| Home School: not listed, | ) | Eighth Floor, Hearing Room 3 |
| Attending: Rock Creek Academy, | ) | Washington, D.C. 20002 |
| Respondent. | ) |  |

Parent:

Toloria Gant
1512 Queen Street, NE
Washington, D.C. 20002

Counsel for the Parent/Student:

Douglas Tyrka, Esq.
**Tyrka & Houck, LLC**
1726 Connecticut Avenue, NW   Suite 400
Washington, D.C. 20009

District of Columbia Public Schools:

Aaron E. Price, Sr., Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

An INDEX of NAMES is attached hereto for the benefit of the parties. The index will permit the parties
to identify specific witnesses and other relevant witnesses. The index will be detached before release of
this CONSENT ORDER as a public record.

i

117

**INDEX of NAMES** for D████ G███
Hearing Teleconference: November 8, 2006

Appearing on behalf of DCPS: None.

Appearing on behalf of the parent/student: None.

No testimony was received.

ii

## JURISDICTION

The teleconference convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

## STATEMENT of the CASE

On September 8, 2006, Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of violation on the part of DCPS of the Hearing Officer's Determination/Decision (HOD) issued in this matter August 7, 2006.

The Issue herein was did DCPS violate the August 7, 2006 HOD.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 3:00 P.M., Tuesday, November 7, 2006 at DCPS Headquarters, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002. At the request of the parties, a teleconference was scheduled for 1:15 P.M., November 7, 2006 in Hearing Room 3.

The hearing officer called the teleconference to order when the parties announced they had settled; further, the parties requested that their terms be incorporated into an ORDER.

Without objection, the hearing officer made the following,

### CONSENT ORDER

1. Within 15 schooldays hereof, DCPS/Rock Creek Academy will convene an MDT meeting at Rock Creek Academy to implement the August 7, 2006 HOD.

2. For the said MDT meeting scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day. For disputes under this paragraph, documentation of the parties will be relied upon to determine the good faith of each party.

This is THE FINAL ADMINISTRATIVE ORDER. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this ORDER.

_____    Date: _November 9, 2006_

H. St. Clair, Esq., Hearing Officer

Issued: _11/9/06_

Student Hearing Office, DCPS

119

12/18/2006  18:45    202...4264    TYRKA & ASSOCIA...    PAGE  01/04

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*From*

**Recipient:**        Quinne Harris-Lindsey

**Fax Number:**     202-442-5098/5097

*To*

**From:**             Douglas Tyrka

**Regarding:**       D█████ G█████

**# of pages:**       4

**Notes:**            Revised Final Settlement Agreement


Quinne:

Per our discussion on Friday, December 15, 2006, I have revised this settlement agreement to include a fifteen (15) school day timeline for convening the multidisciplinary team ("MDT") meeting.

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

120



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of the Superintendent
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000     Fax: 202-442-5098
www.k12.dc.us

December 1, 2006

Douglas Tyrka
Tyrka & Associates, L.L.C.
1726 Connecticut Ave., N.W.
Suite 400
Washington, D.C. 2009

**PROPOSED SETTLEMENT/10-Day Letter**

**VIA FACSIMILE 202/265-4264**

Subject: Due Process Hearing for D█████ G██
DOB: ████/96
Attending School: Rock Creek Academy

This letter constitutes an offer of settlement for the above-referenced matter.

By your signature below, you agree to the following terms:

In lieu of the formal Due Process Hearing in the above-referenced matter, the request for which was dated November 16, 2006, the parties to this action, District of Columbia Public Schools (hereinafter "DCPS"), and Parent or Parent's representative (hereinafter "Parent") agree to resolve this matter under the terms and conditions set forth herein. The underlying hearing request was received on November 16, 2006, pursuant to the Individuals with Disabilities Education Act of 2004, 20 U.S.C. §§ 1400 et seq.; proposed regulations cited in 34 CFR §§300 et seq.; DCMR §§ 3000 et. seq., as amended by emergency legislation on July 1, 2005. The parties have agreed to the following terms and conditions:

1. Parent represents that the student is a resident of the District of Columbia, has established residency, and has been registered as attending or non-attending at his/her local school.   If DCPS becomes aware subsequent to the execution of this Settlement Agreement that residency and/or registration has not been completed and/or established then any obligations undertaken by DCPS pursuant to this Settlement Agreement will be terminated, and DCPS shall retain the right to seek relief for any benefit conferred based upon false representations of residency and/or registration.

121

12/18/2006  16:45   202   4264          TYRKA & ASSOCIA          PAGE  03/04
01-Dec-2006 04:54 PM DCPS Office of General Counsel 2024425098                    3/4

2. Parent represents that the student's date of birth is ▓▓▓▓, 1996, that the attending school is Rock Creek Academy.

3. Parent agrees to cooperate fully with DCPS in the implementation of the terms of this Settlement Agreement. Any delay caused by the student, parent, advocate, counsel, or other representative of Parent or the student, as it pertains to leading, meeting, delay, or other compliance with the terms of this Settlement Agreement will toll any deadlines herein by one day for each day of delay. DCPS further retains the right to take necessary action, consistent with IDEA, to ensure the continued delivery of a free appropriate public education for the student to the extent the delivery of such free appropriate public education may be impeded by delay caused by the student, parent, advocate, counsel, or other representative of Parent or the student.

4. To the extent that the action described herein has not occurred, or the relief sought in the Due Process Hearing Request has not been provided, the parties agree to the following:
    , within fifteen (15) school days
    Convene a MDT meeting to develop a compensatory education plan per the terms of this August 7, and November 9, 2006 HODs.

5. For students or parents represented by counsel, DCPS shall advise counsel of all communications regarding scheduling of meetings/conferences/evaluations conducted pursuant to this Settlement Agreement.

6. The parties agree that execution of this Settlement Agreement will occur when the signatures of Parent and DCPS have been affixed below and undersigned counsel for DCPS has received transmittal of the signed Settlement Agreement. Parent/Court appointed educational advocate reserves the right a hearing if the parties disagree with any compensatory education award.

7. If, for some reason, DCPS is unable to comply with this Settlement Agreement as a result of reasonably unforeseen circumstances, or circumstances beyond its control (e.g., natural disaster or emergency), the parties agree to communicate about extending the deadlines reasonably or to negotiate new timelines, whichever appropriate.

8. Parent agrees to contact the Director of Compliance in the Office of Special Education in the event of a failure to comply with the terms incorporated in this Settlement Agreement in order to provide DCPS a reasonable opportunity to bring the case into compliance prior to Parent initiating further proceedings based on an alleged failure to comply. The parties agree that the method of communication will be by facsimile to (202) 442-5517.

9. This Settlement Agreement is in full satisfaction and settlement of all the claims contained in the pending hearing request, including, but not limited to, all claims that Parent now asserts or could have asserted as of the date of this Settlement Agreement.

10. Parent agrees to accept reasonable attorney fees not to exceed One Thousand ($1,000.00) Dollars, as full and final payment of any attorney fees and related costs incurred, or to be incurred, in this matter. Payment of the specified amount is contingent upon submission of the following:  a)  a certified invoice conforming to the DCPS attorney fee guidelines and itemizing all costs incurred to date relating to the pending hearing request; and b) signature by the parent below or written authorization by the parent for the attorney to enter into this Settlement Agreement on the parent's behalf.

11. Parent agrees that the hearing request that is the subject of this Settlement Agreement will be withdrawn immediately and that written evidence of such withdrawal must be provided to DCPS before any invoices will be processed for payment pursuant to this Settlement Agreement.

Agreed to: _____        Date: 12/18/06
            Quinne Harris-Lindsey, Esquire
            Attorney Advisor


I hereby certify that I am authorized to sign this Agreement on behalf of my client, Daquan Gant.

Agreed to: _____        Date: 12/18/06
            Douglas Tyrka, Esquire
            Counsel for Parent

123

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Aaron Price, Sr. |
| *Fax Number:* | 202-442-5098 |
| *From:* | Douglas Tyrka |
| *Regarding:* | D█████ G████ |
| *# of pages:* | 18 |
| *Notes:* | Exhibits for Motion for Reconsideration filed yesterday, April 10, 2007 |

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**      Hearing Officer Semour DuBow

**Fax Number:**     202-442-5556

**From:**           Douglas Tyrka

**Regarding:**      D██ G██

**# of pages:**     18

**Notes:**          Exhibits for Motion for Reconsideration filed
                    yesterday, April 10, 2007

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

125

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
                              TIME  : 04/11/2007 10:04
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
┌───────────────────────────────────────────────────────┐
│  DATE,TIME          04/11  09:58                        │
│  FAX NO./NAME       2024425556                          │
│  DURATION           00:05:38                            │
│  PAGE(S)            17                                  │
│  RESULT             OK                                  │
│  MODE               STANDARD                            │
│                     ECM                                 │
└───────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Officer Semour DuBow |
| *Fax Number:* | 202-442-5556 |
| *From:* | Douglas Tyrka |
| *Regarding:* | D███ G███ |
| *# of pages:* | 18 |
| *Notes:* | Exhibits for Motion for Reconsideration filed yesterday, April 10, 2007 |

126

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME : 04/11/2007 10:11
                              NAME : TYRKA & ASSOCIATES
                              FAX  : 2022654264
                              TEL  : 2022654260
                              SER.# : 000A6J693992
```

```
DATE,TIME           04/11  10:05
FAX NO./NAME        2024425097
DURATION            00:05:46
PAGE(S)             17
RESULT              OK
MODE                STANDARD
                    ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

| | |
|---|---|
| *Recipient:* | Aaron Price, Sr. |
| *Fax Number:* | 202-442-5098 |
| *From:* | Douglas Tyrka |
| *Regarding:* | D██ G██ |
| *# of pages:* | 18 |
| *Notes:* | Exhibits for Motion for Reconsideration filed yesterday, April 10, 2007 |

127

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

**INDIVIDUALIZED EDUCATION PROGRAM**
**(IEP)**
**MEETING NOTES**

**STUDENT:** ▮▮▮▮▮  **SCHOOL:** Rock Creek Academy  **DATE:** 3/22/2006

| PARTICIPANTS | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Ms. Long | | Special Educator |
| Ms. Kress | | Clinical Therapist |
| Ms. Haley | | Speech Pathologist |
| Ms. Page | | IEP Coordinator |
| Ms. Hoffman-Peak | | DCPS Attorney |
| Ms. McKenzie | | Special Educator |
| Ms. Kepple | | Special Educator |
| Ms. Blythe | | DCPS-LEA Monitor |

The purpose of today's meeting is to update ▮▮▮ IEP, discuss comp ed. and discuss his overall progress. DCPS participated.

Ms. Kress, Clinical Therapist: Ms. Kress devise a goal to improve his on task behavior to help with his focus and frustration. ▮▮▮ does engage in a game for him to describe how he gets off focus. Ultimately, she would like to see ▮▮▮ decrease disruptive behavior. Ms. Kress would like to explore whether or not if he has psychotic issues going on. Ms. Kress has consulted with the teachers to see if this has been noted in the classroom they report that it was not occuring. In addition, ▮▮▮ has a big attendance problem. ▮▮▮ has explained that he misses the bus and his mom doesn't bring him to school. Ms. Kress does call but seldomly has the opportunity to speak with her. It's Ms. Kress clinical opionion that if he auditory hallucination it would manifest itself everywhere.

Ms. Blythe, DCPS-LEA Monitor: Last year the parent said, "He was hallucinating and currently on medication." Previous evaluations doesn't note that he actually is psychotic, however it appears to be more of an interview.

▮▮▮ has a very full emotional range when interacting with his peers, and Ms. Haley strongly questions the auditory hallucinations. He has made progress in speech therapy and he is almost at 70% with his short-term objectives. ▮▮▮ has a willingness to come to speech therapy, however the only issue in therapy is when he gets distracted when being challenged with new materials. Ms. Haley current sees ▮▮▮ for a .5 hour per/wk and Ms. Haley is recommending that he has a current speech language evaluation to be conducted to further determine what his present level of functioning in comparison to his functioning in 2003.

Ms. McKenzie, Math Teacher: Currently in math ▮▮▮ is very good with addition and subtraction. Now they have move on to different concepts, however his attendance severely impacts his progress, because he misses a lot of material being taught. ▮▮▮ is relatively next when completing assignments that doesn't require him to transfer information from the board to the paper. It appears that he can do, but it seems like he just shut down.

Ms. Kepple, Reading Teacher: ▮▮▮ has the capability to be mainstreamed, however the classroom teachers would need to give him prompts when needed, but his programming should be a combination program. His attendance is a big issues that strongly impacts his performance. His weakness is in the area of comprehension. Ms. Kepple would like to revised the goals in light of the new testing. He often state in class that he's tired and have a stomach ache or he's to hot and to cold in the classroom.

Ms. Kress, Clinical Therapist reviewed the FBA that was completed August of 2005 that was an independent evaluation per HOD. It was noted in the report the teacer describe him as being a good student, but sometimes sleepy and off task at times. He participates better in small group setting and invested in the LEVEL system, as well as him being willing to except redirections. During the observation ▮▮▮ was able to stay on task and appropriately ask for assistance when necessary. The evaluator was looking for behaviors such as aggression, outburst, disrespect etc.....within 60 mins. none of these behaviors were noted. The evaluator didn't state anything in the report about hallucination. Please see the FBA for recommendations.

Comp Ed. ▮▮▮ isn't eligible for comp ed. because he's currently functioning on grade level, and the area that he's struggling is being impacted due to his attendance. Please see educational evaluation dated 12/5/2004. A behavior

1:28

intervention plan is not recommended by the therapist because he doesn't show any behavior problem. Classroom teachers are in agreement.

████████ is still a student that require special education services as a student with an Emotional Disability. He will continue to receive 26 hours of week of specialized instructions, 1 hours per/wk of clinical counseling and .5 hours of week. of speech.

*Blake/ Jennifer*

*Keesha*

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## STATE ENFORCEMENT & INVESTIGATONS DIVISION

David R. Smith, Due Process Hearing Officer
825 North Capital Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

| | |
|---|---|
| In the Matter of )<br><br>_____ ("Student") )<br>Date of Birth: _____ )<br>        Petitioner, )<br><br>          v. )<br> )<br> )<br> )<br>District of Columbia Public Schools )<br>825 North Capitol Street, NW )<br>Washington, DC 2000 2 )<br> )<br>("DCPS" or "District") )<br> )<br>__Respondent._____ ) | **IMPARTIAL DUE PROCESS**<br><br>**HEARING OFFICER'S DECISION**[1]<br><br>Hearing Date: June 10, 2005<br><br>Held at: 825 North Capitol Street, NW<br>8th Floor<br>Washington, DC 20002<br><br><br>Attending School:<br>Rock Creek Academy<br><br>Hearing Request:<br>May 3, 2005 |

Counsel for parent:

Douglas Tyrka, Esq.
5505 Connecticut Ave., N.W.
Suite 174
Washington, DC 20015

Counsel for DCPS:

Karen J. Herbert, Esq.
District of Columbia Public Schools,
9th Floor
825 North Capitol Street, NW
Washington, DC 20002

---

An index of names is attached hereto for the benefit of the parties. The index will permit
the parties to identify specific witnesses and other relevant persons. The index is
designed to be detached before release of this Hearing Officer's Determination as a
public record.

# INDEX OF NAMES

 vs. DCPS

| | |
|---|---|
| Principal | |
| Placement Specialist, DCPS | |
| School Social Worker, DCPS | |
| Special Education Teacher, DCPS | |
| Case Manager, DCPS | |
| Speech and Language Pathologist | |
| Psychologist | |
| Occupational Therapist | |
| Education Advocate | Ms. Sharon Millis |
| CHILD AND CHILD'S DCPS ID # or SSN (ID # or Case Number on each page of the HO vice child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Douglas Tyrka, Esq. |
| School System's Representative | Karen J. Herbert, Esq. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

2

131

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400
DISTRICT OF COLUMBIA PUBLIC SCHOOLS
IMPARTIAL DUE PROCESS HEARING**

**INTRODUCTION:**

A Due Process Hearing was convened on June 10, 2005 at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002. The Hearing was held pursuant to a hearing request submitted by counsel for the parent received May 3, 2005.

**JURISDICTION:**

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145*, effective October 21, 1998.

**DUE PROCESS RIGHTS:**

Counsel for the parent waived a formal reading of the due process rights.

**FINDINGS OF FACT:**

1.    A Due Process Hearing was held on March 9, 2005 resulting in a Hearing Officer's Determination ("HOD") issued March 15, 2005. The HOD incorporated the terms of a settlement between the parties that the parties requested to be stated on the record. The HOD contained the following term, among others:

> "1.    DCPS will conduct a Functional Behavior Assessment ("FBA") and convene an MDT/IEP meeting within 30 calendar days after completion of the FBA. The team will also review the FBA and develop an appropriate Behavior Intervention Plan, review and if necessary, revise the student's IEP and discuss and determine compensatory education, if warranted."

2.    On May 3, 2005, counsel for the student filed a hearing request on the basis that DCPS had violated the March 15, 2005 HOD by failing to perform the FBA as it had agreed to do. Counsel for the student now requests that DCPS be ordered to fund an independent FBA and that persons have been identified by the parent who can perform the FBA in a timely manner. DCPS asserted on the record that DCPS could begin an FBA within two weeks.

3.    In view of the fact that this Due Process Hearing is based on the failure of DCPS to comply with a recently issued HOD, it is in the best interest of the student for this process not to be delayed further; accordingly, the request of the student's counsel is reasonable.

3

132

**ORDER:**

1.      DCPS will fund an independent FBA at market rate and provide a copy of the report to DCPS upon receipt.

2.      Within 15 business days of DCPS' receipt of the FBA, it will convene an MDT/IEP meeting to review the FBA, review and revise the student's IEP as necessary, discuss and determine the student's entitlement to compensatory education, and discuss and determine placement.

3.      With regard to placement, if a public placement is determined appropriate, DCPS will issue a prior notice within 5 business days of the MDT/IEP meeting.  If a private placement is determined appropriate, DCPS will issue a prior notice within 30 calendar days of the meeting.

4.      With regard to compensatory education, if the team determines that the student is entitled to compensatory education; it will develop a compensatory education plan.

5.      All meetings are to be scheduled through parent's counsel and any delay in any time line caused by the student, parent or parent's counsel shall extend the applicable time line by one day for each day of delay.

**APPEAL PROCESS:**

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Date: 6-10-05

Issued: 6/10/05

_____
David R. Smith, Esq.
Impartial Hearing Officer

4

133

*Blake/Jennifer*
*Gloster/Austin*

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## STATE ENFORCEMENT & INVESTIGATONS DIVISION

David R. Smith, Due Process Hearing Officer
825 North Capital Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

| | |
|---|---|
| In the Matter of ) | **IMPARTIAL DUE PROCESS** |
| ("Student") ) | |
| Date of Birth: ) | **HEARING OFFICER'S DECISION**[1] |
| Petitioner, ) | |
| ) | Hearing Dates: March 9, 2005 |
| v. ) | |
| ) | Held at:  825 North Capitol Street, NW |
| ) | 8th Floor |
| District of Columbia Public Schools ) | Washington, DC 20002 |
| 825 North Capitol Street, NW ) | |
| Washington, D.C 20002 ) | Home School: |
| ("DCPS" or "District") ) | Rock Creek Academy |
| *Ferebee-Hope ES* ) | |
| Respondent. ) | Hearing Request: |
| | February 4, 2005 |

Counsel for parent:              Douglas Tyrka, Esq.
                                 5505 Connecticut Ave., N.S.
                                 Suite 174
                                 Washington, D.C. 20015

Counsel for DCPS:               Karen J. Herbert, Esq.
                                District of Columbia Public Schools,
                                9th Floor
                                825 North Capitol Street, NW
                                Washington, DC 20002

---

[1] An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Hearing Officer's Determination as a public record.

1

134

# INDEX OF NAMES

 v. DCPS

| | |
|---|---|
| Principal | |
| Executive Director, PCS | |
| Special Education Coordinator | |
| Special Education Teacher | |
| Principal | |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Private Education Advocate | Ms. Sharon Millis |
| Private Education Advocate | |
| CHILD AND CHILD'S DCPS ID # or SSN (insert ID # or Case Number on each page of the HCD vice child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Douglas Tyrka, Esq. |
| School System's Representative | Karen J. Herbert, Esq. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**IMPARTIAL DUE PROCESS HEARING**

**INTRODUCTION:**

A Due Process Hearing was convened on March 9, 2005 at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002. The Hearing was held pursuant to a hearing request submitted by counsel for the parent dated February 1, 2005.

**JURISDICTION:**

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145*, effective October 21, 1998.

**DUE PROCESS RIGHTS:**

Counsel for the parent waived a formal reading of the due process rights.

**SUMMARY:**

The parties discussed the case on the record and were able to reach an agreement, incorporated herein as an Order below.

**ORDER:**

1.    DCPS will conduct a Functional Behavior Assessment ("FBA") and convene an MDT/IIEP meeting within 30 calendar days after completion of the FBA. The team will also review the FBA and develop an appropriate Behavior Intervention Plan, review and if necessary revise the student's IEP and discuss and determine compensatory education, if warranted.

2.    All meeting are to be scheduled through parent's counsel and any delay in any time line caused by the student, parent or the parent's counsel shall extend the applicable time line by one day for each day of delay.

136

**APPEAL PROCESS**

    This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Date: 3/4-05

Issued: 3-15-05

                      David R. Smith, Esq.
                      Impartial Hearing Officer

137

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

**Clifford B. Janey, Ed. D, Chief State School Officer**



## *The Special Education Student Hearing Office*
## *Due Process Hearing*
## *Standard Operating Procedures*

*A Handbook for Hearing Officers, the Local and State Educational Agencies, Parent / Child's Representatives, and the Student Hearing Office Staff*

**District of Columbia Public Schools**
**State Enforcement & Investigation Division**
**Special Education Programs**
**Student Hearing Office**
**825 North Capitol Street NE, Suite 8076**
**Washington, DC   20002-1994**
**Phone:  (202)442-5432   /   Fax:  (202)442-5556**

The Student Hearing Office will transmit the Hearing Officer's Determination to all parties as near-simultaneously as possible and will not disclose the content of any Hearing Officer's Determination to any party prior to the dissemination of the decision to all parties. Specifically, the Student Hearing Office will distribute a copy of the Hearing Officer's Determination to: (1) the Superintendent or Director of the LEA or their representative, (2) the child's parent or representative, and (3) the student (if greater than 18 years of age). The Student Hearing Office and the Hearing Officer will retain a copy of the final decision and maintain a record of the transmittal (fax confirmation, signature of personal delivery, and/or certified mail receipt). After deleting personally identifiable information from the Hearing Officer's Determination, the Student Hearing Office shall make the findings and decisions available to the public by publication or at a reasonable cost and within 30 days of issuance.

# § 1004   FINAL DECISION AND RIGHT OF APPEAL

The decision issued by the Hearing Officer is final, except that any party aggrieved by the findings and decision of the Hearing Officer shall have 90 days from the date of the decision of the hearing officer to file a civil action with respect to the issues presented at the due process hearing in a district court of the United States or a District of Columbia court of competent jurisdiction, as provided in 20 U.S.C. § 1415(i)(2).

# § 1005   RECONSIDERATION OF HEARING DECISION

Reconsideration of a hearing decision may be granted on the timely filing of a motion for reconsideration.

Any motion for reconsideration must be filed within ten (10) days of the date of the Order is issued.  The hearing officer shall afford the opposing party or parties an opportunity to respond prior to granting the motion.  No response to a motion for reconsideration is required unless ordered by the Hearing Officer, which order shall specify the deadline for filing of a response.

Unless otherwise ordered by the hearing officer, the filing of a motion for reconsideration shall not stay the effectiveness of the order.  The filing of a motion for reconsideration on a final order, if such motion is timely filed, the order shall not be deemed final for purposes of judicial review until the motion is ruled upon by the Hearing Officer or is denied by operation of law.

A motion for reconsideration shall be deemed denied by operation of law if the Hearing Officer has not ruled upon the motion within thirty (30) days of the date that the motion is filed with the Student Hearing Office.

38